Douglas Greenberg, CA Bar #255505
Law Office of Douglas Greenberg
201 Spear Street, Suite 1100
San Francisco, CA 94105
Ph: (415) 287-9990
Fax: (415) 534-9441

Attorney for:
John Spottiswood and Nancy Miyasaki

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| JOHN SPOTTISWOOD and NANCY MIYASAKI,<br><br>　　　　Plaintiff,<br><br>vs.<br><br>UNITED STATES OF AMERICA,<br><br>　　　　Defendant. | No. CV-17-00209 MEJ<br><br>MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' CROSS MOTION FOR SUMMARY JUDGMENT<br><br>Judge: Hon. Maria-Elena James<br>Date:　March 1, 2018<br>Time:　10:00 a.m. |

　　　Plaintiffs John Spottiswood and Nancy Miyasaki submit the following Memorandum of Law in Support of Plaintiffs' Cross Motion for Summary Judgment.

[Memorandum of Law in Support of Motion] - 1

STATEMENT OF UNDISPUTED FACTS

1. Plaintiff, John Spottiswood (hereinafter, "Plaintiff husband"), prepared a joint federal income tax return for he and his wife, Plaintiff Nancy Miyasaki, for the 2012 tax year using TurboTax, a consumer tax software. Defendant's Motion for Summary Judgment ¶ 1.

2. On that return, Plaintiff husband made a mistake when inputting the social security number for a dependent. The joint 2012 Form 1040 containing that error was transmitted to TurboTax on or about April 12, 2013 to be electronically submitted to the IRS for electronic filing. Defendant's Motion for Summary Judgment ¶ 2.

3. On April 12, 2013, the IRS rejected Plaintiffs' 2012 joint Form 1040 for electronic filing. Defendant's Motion for Summary Judgment ¶ 3.

4. The IRS notified TurboTax the Form 1040 had been rejected for electronic filing due to an error - the dependent's Social Security number and last name do not match IRS records. Defendant's Motion for Summary Judgment ¶ 4.

5. On or about April 12, 2013, TurboTax sent an email to Plaintiff husband notifying him the IRS had rejected the 2012 joint federal income tax return with error R0000-504-02, meaning that the dependent's Social Security number and last name on the return did not match what the IRS has in its records. Defendant's Motion for Summary Judgment ¶ 5.

6. Within the TurboTax software, there was a "check e-file status" screen for the 2012 joint Form 1040. However, Plaintiff Husband did not check the "check e-file status" until many months later. The TurboTax notification provided the following notice:

- Rejected: Return reviewed

   After fixing your errors, we'll help you file your return again.

- Verify Dependent's Social Security Number. The Social Security number or the last name does not match what the IRS has in their records.

[Memorandum of Law in Support of Motion] - 2

     • Rejection error R0000-504-02: Dependent's Social Security number or name doesn't match.  Defendant's Motion for Summary Judgment ¶ 7.

7. Plaintiff husband did not receive notice of the e-filing rejection until much later, though at this time the exact date is unclear.  Defendant's Motion for Summary Judgment ¶ 8.

8. Plaintiff husband provided the following statement to the IRS:

> When I was investigating the issue, I discovered the following by logging back into my Turbo Tax 2012 software. First, I discovered that my return, which I thought had been successfully e-filed, had actually been rejected. If I had realized that there was a chance of rejection I would have mailed in my return, but e-filing seemed like an easier option and it was free with the software. Intuit may have informed me in the fine print that I needed to log back in to make sure that my return had not been rejected, but if so I did not read this fine print. Had I logged back in a few days later I would have realized that the return had been rejected. But I did not log back in until 18 months later.

Letter from Plaintiff husband to IRS with submission date of April 27, 2015, p. 1, ¶ 6, Defendant's Motion for Summary Judgment ¶ 9.

9. Plaintiff husband prepared the couples' joint 2012 California State Income Tax Return using TurboTax but did not electronically file the 2012 state tax return. Rather, he used the U.S. mail to file their 2012 state income tax return.  Defendant's Motion for Summary Judgment ¶ 10.

10. Plaintiffs filed an abatement request with the IRS in August, 2016.  The request was prepared by the undersigned attorney and filed via IRS Form 843.  In the statement attached to that request, a representation was made that Plaintiffs' 2012 state tax return had been electronically filed using TurboTax without issue. Claim for Refund, pp. 1 (signature under penalty of perjury). Claim for Refund is Exhibit 3B to Stier Declaration. This representation was

[Memorandum of Law in Support of Motion] - 3

not accurate. As stated above, the state return was actually mailed rather than e-filed so this was not correct.

11. On their 2012 joint federal income tax return, Plaintiffs reported owing $395,619 in federal income taxes and paid that amount on January 7, 2015, the date that their 2012 joint federal income tax return was filed with the IRS. Defendant's Motion for Summary Judgment ¶ 12.

12. Plaintiffs failed to notice that $395,619 had not been withdrawn from their Bank of America bank account because they had an unusually high bank account balance. Defendant's Motion for Summary Judgment ¶ 13.

13. Plaintiffs filed their 2012 joint Form 1040 on January 7, 2015, and paid the $395,619 in income tax liability in full. Defendant's Motion for Summary Judgment ¶ 14.

14. On February 16, 2015, the IRS assessed a late filing penalty of $89,014.27, a penalty for failure to pay of $41,539.99, and interest thereon. Motion for Summary Judgment ¶ 15.

15. A transcript of the return which Plaintiff husbanded attempted to file is attached to Plaintiffs' Opposition to Defendant United States' Motion for Summary Judgment and Cross Motion for Summary Judgment as Exhibit 1.

16. Plaintiffs' refund suit seeks abatement and a refund of the penalties for late filing and failure to pay and any interest on those penalties. Plaintiffs do not contest any other penalty or assessed interest.

17. On January 17, 2017, Plaintiffs filed this action seeking a refund of the assessed penalties for failure to file the 2012 Form 1040 and to pay the tax thereon, and for any interest attributable to those penalties.

DISCUSSION

A. Standard for Motion for Summary Judgment

Summary judgment is proper if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. Celotex Corp. v. Cattrett, 477 U.S. 317, 322 (1986) (citing Fed. R. Civ. P. 56(c)). A party who moves for summary judgment bearing the burden of proof at trial, must produce evidence that would entitle him or her to a directed verdict if the evidence went uncontroverted at trial. C.A.R. Transp. Brokerage Co., Inc. v. Darden, 213 F.3d 474, 480 (9th Cir. 2000).

In this case, the material facts are not in dispute. Thus, summary judgment is appropriate. See generally Celotex.

B. Summary of Plaintiffs' Argument

Plaintiffs generally agree with Defendant United States. After e-filing their tax returns, Plaintiffs' diligence and follow-through left much to be desired. The couple failed to note that their bank account was never debited to pay the substantial 2012 federal tax balance shown on their own, self-prepared returns. Intuit sent an email to Plaintiff husband, at an e-mail address which he supplied, yet Plaintiff husband cannot recall having received this notice.

The reasonable cause standard requires that taxpayers exercise ordinary business care and prudence; a duty which cannot be delegated away to an agent. See generally United States v. Boyle, 469 U.S. 241 (1985). We agree that in this case, Taxpayers' conduct after submitting the e-filed returns was generally not in keeping with the reasonable cause standard.

However, we believe this may not matter. Under established case law, what Plaintiff husband e-filed was nevertheless, a valid 'return' for income tax purposes. Once the button was

clicked and Plaintiffs' return was transmitted, there was a valid and timely return filed. There was no late filing.

### C. Did Plaintiffs' Rejected E-Filing Constitute a 'Return'?

The first major case to examine what constitutes an income tax 'return' was Florsheim Bros. Drygoods Co. v. United States, 280 U.S. 453 (1930). At a time when the income tax was relatively new, a company filed for a temporary extension of time to file. See Forsheim Bros. Drygoods Co. at 460. Because the extension was not a list, schedule or return and did not specifically state the taxpayer's gross income, deductions and credits, it did not satisfy the requirements of an income tax return. Id. at 460. However, the Court noted that "the filing of a return which is defective or incomplete" may be sufficient to constitute a return, provided "the defective or incomplete return purports to be a specific statement of the (taxpayer's) items of income, deductions and credits." Id. at 462.

Next, in Zellerbach Paper Co. v. Helvering, 293 U.S. 172 (1934), a corporation filed an income tax return but new changes in the tax laws required that it file an additional return, which the company failed to submit. Nevertheless, the initial return was found to be sufficient. See Zellerbach Paper Co. v. Helvering at 180 ("Perfect accuracy or completeness is not necessary to rescue a return from nullity, if it purports to be a return, is sworn as such and evinces and honest and genuine endeavor to satisfy the law.").

Then in Germantown Trust Co. v. Commissioner, 309 U.S. 304 (1940), a taxpayer used the incorrect form to file its income tax returns. Despite using the wrong form, the return was deemed sufficient anyway. The return was valid because it "contained all of the data from which a tax could be computed and assessed." Germantown Trust Co. v. Commissioner at 308. See also, Lane-Wells Co. v. Commissioner, 134 F.2d 977 (9th Cir. App. 1943) (following Germantown Trust Co. under similar facts).

1  Eventually, from these cases a four-part test was established.  See <u>Beard v.
2  Commissioner</u>, 82 T.C. 766 (1984).   The test to determine whether a document is sufficient to
3  be considered a return has four elements:
4  (1) first, there must be sufficient data to calculate the tax liability,
5  (2) second, the document must purport to be a return,
6  (3) third, there must be an honest and reasonable attempt to satisfy the requirements of
7  the tax law, and
8  (4) fourth, the taxpayer must execute the return under penalties of perjury.  See <u>Beard v.
9  Commissioner</u> at 777; see also <u>United States v. Hatton (In re Hatton)</u>, 220 F.3d 1057 (9th Cir.
10  App. 2000) (applying the Beard factors).
11  The <u>Beard</u> factors eventually became known as the "substantial compliance standard;" a
12  standard which is generally accepted by the IRS.  See IRS Chief Counsel Advice Memorandum
13  201545016, p. 4 ("return was incorrect but as long as the return "on its face plausibly purports to
14  be in compliance," the fact that it is incorrect or even fraudulent does not prevent it from being a
15  valid return.").
16  Applying the <u>Beard</u> factors to the instant case, all four elements are met.  First, the return
17  which Plaintiff husband submitted for e-filing contained sufficient data to calculate the couples'
18  tax liability.  See Exhibit 1 of Plaintiffs' Opposition to Defendant United States' Motion for
19  Summary Judgment and Cross Motion for Summary Judgment.  The only issue with the return
20  was that Plaintiff husband made a typo on one of his dependent's social security numbers.  As
21  explained below, these types of errors are commonly corrected for paper returns and sent through
22  for normal processing.  Second, the document purported to be a return.  The transmitted return
23  was filed on a regular Form 1040 and contained all of the couple's relevant tax data.  Third, there
24  was an honest and reasonable attempt to satisfy the requirements of the tax law.  As can be seen
25  from the e-file transcripts, the return is complete in all important respects.  Finally, fourth, the

taxpayer executed the return under penalty of perjury, a requirement which is satisfied electronically when submitting for e-filing.

### D. IRS Return Processing

When processing income tax returns, the IRS has created something of a double standard. See Exhibit 2 & 3 of Plaintiffs' Opposition to Defendant United States' Motion for Summary Judgment and Cross Motion for Summary Judgment. E-filed returns are treated differently than paper returns. For paper returns, special staff and examiners are involved to ensure that common errors are corrected and continue to be processed normally. No such services exist for e-filed returns.

Exhibit 2 contains excerpts from the Internal Revenue Manual, which sets out IRS procedures. See Exhibit 2. The procedures in Exhibit 2 are for processing paper returns. For paper returns, the IRS employs code and edit examiners to fix common mistakes so they may continue being processed normally. See Exhibit 2. Section 3.11.3.13.3 specifically addresses invalid or missing dependent taxpayer identification numbers ("TINs"). Here, paper returns with such errors are examined and edited so that they may continue being processed normally. In the instant case, had Plaintiffs simply filed a paper return, their return would have been edited and processed as shown in the manual. There would not have been any late filing penalties.

Exhibit 3 contains some of the IRS procedures for processing e-filed returns. Here, no examiners or special staff are present to correct common mistakes. See Exhibit 3. Section 3.42.5.9.2 explains that returns should be transmitted to the appropriate IRS campus within 24 hours. Thereafter, rejected returns will trigger a notification which is sent back to the tax preparation software used by the taxpayer. Filing companies are to then translate the IRS reject codes into language which the taxpayer can understand. Per section 3.42.5.4, taxpayers may be able to call and report the transmission of an incorrect social security number to the IRS. See

Exhibit 3.  However, this pre-requires that taxpayers be aware of the error and timely get a hold of the appropriate IRS department.

The above system establishes something of a double standard for e-filers.  Even minor errors, such as the transposition of a digit, the misspelling of a name or other typos result in a complete rejection of the entire return, with the onus on the taxpayer to continue monitoring their e-file status and follow up on the matter.  No such requirements exist for paper filers.  These high standards, which exist only for e-filers, do not comport with the legal regime established by Beard and its Supreme Court predecessors.  Per IRS e-filing procedures, there is no mention of the Beard factors or the substantial compliance doctrine.  Further, no inquiry is required as to whether there was an honest and reasonable attempt to comply with the tax laws.

### E. Filing Date

Treasury Regulation 26 C.F.R. 301.7502-1(d)(1) provides that an e-filed document is deemed to be filed on the date of the electronic postmark.  In this case, there is no dispute that the IRS received Plaintiffs' e-filing on or before April 12, 2013.  The IRS transcript notes this date as the received date for the return.  See Exhibit 1, pps. 16-19 of Plaintiffs' Opposition to Defendant's Motion for Summary Judgment and Cross Motion for Summary Judgment (top right in the header).

### Conclusion

Defendant United States bases its summary judgment motion on the argument that a return cannot be considered filed until it is acknowledged by the IRS and found acceptable by the agency for processing.  See Defendant's Memorandum of Law in Support of Motion for Summary Judgment, p. 6.  However, this has never been the applicable standard and ignores nearly a century of legal history.  Such a standard would make the IRS the ultimate arbiter of

which returns are sufficient and which are not. Further, it would represent a radical departure from existing legal authorities and the system of judicial review which has shaped them since the creation of the income tax return. According to the IRS's own Chief Counsel, the Beard formulation is 'generally accepted' and is satisfied by incorrect and even fraudulent returns. See IRS Chief Counsel Advice Memorandum 201545016, p. 4. We believe that Plaintiffs' e-filing meets this standard and qualifies as a valid return.

_____         __01/30/2018____.
Douglas Greenberg         Date
Attorney for Plaintiffs
Law Office of Douglas Greenberg
201 Spear Street, Suite 1100
San Francisco, CA 94105
Ph: (415) 287-9990
Fax: (415) 738-5440